UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION
Civil Action No. 3:08cv40/MCR/MD

| | |
|---|---|
| DEBORAH BONN, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>L-3 COMMUNICATIONS )<br>VERTEX AEROSPACE, LLC, )<br>)<br>Defendant. )<br>_____ ) | **BRIEF IN SUPPORT OF VERTEX'S MOTION TO APPLY FLORIDA'S WRONGFUL DEATH ACT** |

**COMES NOW** L-3 Communications Vertex Aerospace, LLC ("Vertex"), Defendant in the above-captioned action, and hereby files its brief in support of its Motion to apply the provisions of Florida's Wrongful Death Act to this case.

**I.    SUMMARY OF ARGUMENT**

This case arises out of the fatal crash of a military training flight near Rome, Georgia.  Aboard the flight were two members of the U.S. Navy, one member of the U.S. Air Force, and a civilian pilot employed by Defendant Vertex.  Currently at issue is the choice of law problem raised by the fact that Vertex and the three decedents whose estates have brought claims in this action were all domiciled in separate states.  Vertex was a domiciliary of Mississippi, Lieutenant Jason Manse was a domiciliary of Florida, 1st Lieutenant Jason Davis was a domiciliary of California, and Ensign Elizabeth Bonn was a domiciliary of Pennsylvania.

While there does not appear to be an actual conflict regarding the general negligence standards that will be applied to determine liability in this matter, there is a conflict with respect to the applicable wrongful death statutes. During discovery, plaintiffs indicated that they would take the position that Florida's wrongful death statute should apply to the claims of Lt. Manse and 1st Lt. Davis, but that Pennsylvania's wrongful death statute should apply to the claims of Ensign Bonn.[1] Vertex is in agreement with plaintiffs that Florida's wrongful death statute apply to the Manse and Davis claims, and Vertex will show that Florida's wrongful death statute should be applied to the Bonn claim as well. The wrongful death statutes of Pennsylvania and Florida are in conflict because Florida does not allow recovery of future lost wages for persons under the age of 25, while Pennsylvania allows such recovery. At the time of her death, Ensign Bonn was 23 years of age.

Since this matter was transferred to this Court pursuant to 28 U.S.C. §1404 from the United States District Court for the Southern District of New York, New York law is used to determine choice of law issues. New York's choice of law rules dictate that Florida's wrongful death statute should apply because it has a more significant relationship with the parties than Pennsylvania. Indeed, the entirety of the parties' relationship with each other was based in Florida. Vertex and the decedents were all involved in the Undergraduate Military Flight Officer (UMFO) training program at NAS Pensacola in Florida. Pursuant to a contract with the Navy, Vertex provides logistics support in Florida for the UMFO program, including aircraft maintenance and piloting of

---

[1] The Manse and Davis claims have since been resolved, so the Bonn claim is the sole remaining claim in this case.

training flights. Prior to the accident, Lt. Manse was an instructor for the UMFO program, based at NAS Pensacola for nearly three years. 1st Lt. Davis and Ensign Bonn were also based at NAS Pensacola, and had been receiving training there for almost a year and a half. The training flight in question originated out of NAS Pensacola, and was scheduled to return there. By contrast, the only connection that Pennsylvania has is that Ensign Bonn resided there prior to joining the Navy. In light of Pennsylvania's slim ties to this action, it would run contrary to New York's choice of law rules to apply Pennsylvania's wrongful death statute in this case.

## II.   BACKGROUND

### A.   The Mission

On the morning of January 10, 2006, a T-39 Saberliner aircraft departed from NAS Pensacola. The flight's crew included Lieutenant Jason Manse, 1st Lieutenant Jason Davis, and Ensign Elizabeth Bonn. The purpose of the flight was to perform a low-level navigation training mission as part of the UMFO training program. Lt. Manse, a training instructor, conducted the actual navigation training, while Ensign Bonn and 1st Lt. Davis both received training from Lt. Manse. Piloting the flight was David Roark, a civilian pilot and employee of Vertex. Pursuant to a contract between Vertex and the U.S. Navy, Vertex provided logistics support for the Navy's UMFO radar training program. This logistics support included, among other things, providing qualified civilian pilots to operate the T-39 aircraft during navigation training missions. [Deposition of Pieter Vandenbergh, as 30(b)(6) representative for Vertex (Vandenbergh Dep.), 26:9-13].

On the first leg of the mission, the crew flew without incident from NAS Pensacola to Chattanooga, Tennessee. [Deposition of Commander Daniel Wells (Wells Dep.), 114:19-115:5]. At noon, the crew departed Chattanooga to continue the training mission by conducting a low-level flight through a military flight corridor in the mountains of north Georgia known as VR-1055. [Wells Dep., 114:19-115:5]. Upon entry into VR-1055, the aircraft flew the low level training mission for approximately 4 to 5 minutes. At approximately 12:30 pm, for reasons unknown, the aircraft hit trees at the top of a mountain ridge near Rome, Georgia and crashed. [Wells Dep., 94:9-17]. The Navy concluded that all aboard were killed instantly upon impact.

    **B.**    **Relevant Procedural History**

On January 7, 2008, the families of Ensign Bonn, Lt. Manse, and 1st Lt. Davis filed separate negligence suits against Vertex in the United States District Court for the Southern District of New York. On January 28, 2008, the New York federal district court consolidated the three lawsuits, then transferred the consolidated action to this Court pursuant to 28 U.S.C. §1404.

**III.**    **Choice of Law**

    **A.**    **New York's choice of law rules should be applied.**

When, as here, a case is transferred from one jurisdiction to another pursuant to 28 U.S.C. §1404, the choice of law rules of the transferor court are to be applied. See Ferens v. John Deere, 494 U.S. 516, 523 (1990). Since this case was transferred to this Court from the Southern District of New York, New York's choice of law rules will apply.

### B.   New York employs an "interest analysis" to determine choice of law issues.

Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." See Matter of Allstate Ins. Co., 613 N.E.2d 936, 937 81 N.Y.2d 219, 223 (N.Y. 1993).  If there is an actual conflict, choice of law issues are decided through use of an "interest analysis," which "focuses on determining which jurisdiction, 'because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" Devore v. Pfizer, Inc., 867 N.Y.S.2d 425, 427, 58 A.D.3d 138, 140 (N.Y. App. Div. 2008); Cooney v. Osgood Machinery, Inc., 612 N.E.2d 277, 280, 81 N.Y.2d 66, 72 (N.Y. 1993).

An important aspect of this analysis is the distinction made between laws that regulate conduct and laws that allocate loss after the commission of a tort.  See Cooney, 612 N.E. 2d at 280.  Laws that regulate conduct include standards of care used to determine whether a tort has been committed.  See id., see also Schultz v. Boy Scouts of America, Inc., 480 N.E.2d 679, 684, 65 N.Y.2d 189, 198 (N.Y. 1985).  On the other hand, loss allocation laws include those laws that govern the payment of damages once it has been determined that a tort has been committed, such as wrongful death statutes.  See Phelan v. Budget Rent A Car Systems, 699 N.Y.S.2d 568, 569, 267 A.D.2d 654, 655 (N.Y. App. Div. 1999).

### C.   There is no conflict regarding applicable conduct regulating laws.

Vertex is unaware of any conflict regarding the conduct regulating rules that should apply to this action.  Vertex believes that this action will be determined using

negligence standards that are generally applicable across jurisdictions. However, to the extent plaintiffs raise a conflict issue with respect to conduct regulating rules, Vertex will address any such issues in its subsequent briefs.

        **D.**        **The applicable loss allocating rules are in conflict.**

According to their initial disclosures, plaintiffs contend that Pennsylvania's wrongful death statute should apply to the Bonn claim, but they agree that Florida's wrongful death statute applies to the Manse and Davis claims. [See Plaintiffs' Initial Disclosures, attached hereto as Exhibit "B"]. The wrongful death statutes of Florida and Pennsylvania conflict in one key respect. For the purposes of Florida's Wrongful Death Act, Ensign Bonn is considered a minor, since she had not reached the age of 25. See Fla. Stat. Ann. §768.18(2); Bonn Dep. 7:8-10. Ensign Bonn was single and had no children, and was not providing financial support to anyone at the time of her death. [Bonn Dep. 8:17-19; 18:1-3; 52:15-55:24]. In Florida, the estate of a single minor with no children such as Ensign Bonn is not allowed to recover the decedent's future lost wages. See Fla. Stat. Ann. §768.21(6)(a)(2). This provision puts Florida's wrongful death statute in conflict with the statutes in Pennsylvania and Georgia, which contain no such a restriction. See Pa. Cons. Stat. §§8301 and 8302 (2007); O.C.G.A. §51-4-5 (2009).

When such a conflict exists, the law of the jurisdiction where the tort occurred will apply unless the application of another state's law "would advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." Schultz, 480 N.E.2d at 687; Neumeier v.

6

Kuehner, 286 N.E.2d 454, 458, 31 N.Y.2d 121, 128 (N.Y. 1972).  In making this determination, it is necessary to consider "which jurisdiction, 'because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'"  Devore v. Pfizer, Inc., 867 N.Y.S.2d at 427.  In order to determine which state's wrongful death statute should apply in this case, we consider below the location of the alleged tort (Georgia), the domicile states of the parties (Mississippi, California, Florida, and Pennsylvania), and finally, the state where the interrelationship of the parties was centered (Florida).

### 1. Georgia is the location of the alleged tort.

"The locus of a tort is generally defined as the place of the injury."  Devore v. Pfizer, 867 N.Y.S.2d at 428.  There should be no dispute regarding the place of the alleged tort.  Plaintiffs' primary claim is that Roark, Vertex's employee and agent, breached his duty to plaintiffs to operate the aircraft in a safe manner.  Plaintiffs claim that Vertex should be vicariously liable for the actions of its employee.  The crash occurred in Georgia, and any alleged failure to properly control the plane so as avoid the crash would have also occurred in Georgia.  The parties in this case have engaged in several months of intense discovery, including numerous depositions, multiple rounds of written discovery, and the production of voluminous documents.  This discovery has yielded no facts to support a claim that actions of Vertex or the pilot prior to the flight were a breach of any duty to the passengers, so to the extent plaintiffs intend to pursue any such claims, Vertex believes they should fail as a matter of law.

### 2. Domicile of the Parties

In addition to the place of the tort, another factor to consider in this choice of law analysis is the domicile of the parties. Under New York law, "domicile means 'living in that locality with intent to make it a fixed and permanent home." See <u>King v. Car Rentals, Inc.</u>, 813 N.Y.S.2d 448, 452, 29 A.D.3d 205, 210 (N.Y. App. Div. 2006). Military personnel are considered to be domiciled in the state where they lived <u>prior to joining the military</u>, unless they have demonstrated the intent to abandon their prior domicile and make their permanent home in a new state. See <u>Zimmerman v. Mingo</u>, 567 N.Y.S.2d 142, 171 A.D.2d 662 (N.Y. Ct. App. 1991). The domicile of each of the parties is considered below.

#### a) Vertex is domiciled in Mississippi.

The domicile of a corporation for choice-of-law purposes is the State where it maintains its principal place of business. <u>Dorsey v. Yantambwe</u>, 715 N.Y.S. 566, 570, 276 A.D.2d 108, 111 (N.Y. Ct. App. 2000). Vertex maintains its principal place of business in Madison, Mississippi[2]; therefore Vertex has a Mississippi domicile.

#### b) Lt. Jason Manse was domiciled in Florida.

Lt. Jason Manse moved with his wife to Pensacola Florida in 2003, and lived there continuously until his death on January 10, 2006. [Deposition of Tammy Manse (Manse Dep.), 11:4-13; 21:5-10]. The family owned a home in Pensacola, where Lt. Manse's widow currently resides. [Manse Dep., 32:17-22]. Lt. Manse applied to the University of Florida Dentistry School, and his application was accepted one or two

---

[2] <u>See</u> Annual Report filed with the Florida Secretary of State, attached hereto as Exhibit "A."

months prior to the plane crash. [Manse Dep. 24:8-16]. Lt. Manse planned to leave the military to practice dentistry, and to continue to reside in Florida permanently. [Manse Dep. 22:14-24:4]. Since Lt. Manse and his family resided in Florida and had plans to remain in Florida permanently, Lt. Manse will be considered a Florida domiciliary. See King v. Car Rentals, Inc., 813 N.Y.S.2d at 452.

### c) 1st Lt. Jason Davis was domiciled in California.

1st Lt. Jason Davis is originally from California, where he attended high school and met and married his wife. [Deposition of Michele J. Davis (Davis Dep.), 6:12-7:6]. He was commissioned in the U.S. Air Force in May 2003, initially based in San Diego. [Davis Dep. 19:19-20:2]. In December 2003, 1st Lt. Davis was sent to Georgia for Air Force pilot training. [Davis Dep. 16:9-19]. He "washed out" of the pilot training program, but was recommended to participate in the navigator program at NAS Pensacola. [Davis Dep. 27:13-28:21]. 1st Lt. Davis and his wife relocated to Florida in July 2004. [Davis Dep. 15:9-11]. Even while residing in Florida, 1st Lt. Davis continued to own his house in California. [Davis Dep. 12:4-8]. He was one flight away from completing navigation training, and had received orders to report to an Air Force base in Texas upon completion of the program. [Davis Dep. 23:15-24:12]. Unlike Lt. Manse, 1st Lt. Davis demonstrated no intent to abandon his California domicile and live permanently in Florida. To the contrary, Florida was simply a waypoint in his military career. See Zimmerman v. Mingo, 567 N.Y.S.2d at 142. Therefore, 1st Lt. Davis had a California domicile for purposes of this analysis.

        **d)**      **Ensign Bonn was domiciled in Pennsylvania.**

Ensign Elizabeth Bonn was originally from the state of Pennsylvania, graduating from high school in Wilkes-Barre in 2000. [Deposition of Deborah A. Bonn (Bonn Dep.), 14:1-8]. She attended college at SUNY Maritime in New York on a Navy ROTC scholarship, and was commissioned in the Navy upon graduation in 2004. [Bonn Dep. 13:1-25]. She was sent by the Navy to Pensacola in July 2004. [Bonn Dep. 15:12-16]. As with 1st Lt. Davis, there are no indications that Ensign Bonn decided to abandon her Pennsylvania domicile prior to her death. [Bonn Dep. 38:6-7; 41:11-42:2]. Therefore, Ensign Bonn will be considered a Pennsylvania domiciliary for the purposes of the choice of law analysis.

        **3.**      **The interrelationship of the parties was centered in Florida.**

Defendant Vertex and each of the decedents were involved with the UMFO training program, which was conducted at Training Air Wing 6 at NAS Pensacola. [Vandenbergh Dep. 25:10-12]. This program included over a year of intensive training, including ground school training, flight simulator training, flight training, and navigation training. [Wells Dep. 273:4-274:11; 276:13-25; 281:11-24].[3] Lt. Manse was an instructor in the program, and had been involved with the program since 2003. [Manse Dep. 11:4-13; 21:5-10]. Both 1st Lt. Davis and Ensign Bonn had been receiving training in the program since July 2004. [Davis Dep. 15:9-11; Bonn Dep. 15:12-4]. Vertex provided logistical support for the program, including providing civilian pilots such as David Roark to pilot all of the training flights. [Vandenbergh Dep., 26:9-13]. Lastly, and

---

[3] See also https://www.cnatra.navy.mil/tw6/index.asp (last accessed September 9, 2009).

importantly, the mission during which the mishap occurred originated in Florida and was scheduled to return to Florida. [Wells Dep. 114:19-115:5; 121:5-9].

### E. Florida's Wrongful Death Act applies to the claims in this case.

In Neumeier v. Kuehner, 286 N.E.2d 454, 31 N.Y.2d 121 (N.Y. 1972), the New York Court of Appeals set forth the standard for determining which state's loss-allocating law will apply where, as here, the parties do not share a common domicile and the place of the tort is not any person's domicile. In these situations, the law of the place of the tort will generally apply, unless application of another state's law "would advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." Id. at 458; Schultz, 480 N.E.2d at 687.

In this case, Florida's loss allocation rules should apply because Florida has the most significant relationship with the parties in this action. As stated above, Vertex and the decedents were all involved together in a military training program conducted in Florida, and each of the decedents had been participating in the program at NAS Pensacola for over a year. The training flight in question originated in Florida, and was scheduled to return there. In short, Florida has a predominant relationship to the facts and parties in this case.

In light of Florida's contacts with the case and the parties, it is clear that its interest in the case far exceeds that of Georgia or Pennsylvania. New York courts have often resisted applying the loss allocation laws of the place of the accident, where, as here, that place is merely fortuitous. See, e.g. King v. Car Rentals, Inc., 813 N.Y.S.2d at

11

458.  In <u>King</u>, the court considered a case where a party domiciled in New York sued a party domiciled in New Jersey following a traffic accident in Quebec.  The court noted that according to <u>Neumeier</u>, the law of Quebec would ordinarily apply since the parties did not share a domicile and the accident did not occur in any party's domicile state.  <u>Id.</u> at 454.  However, the court determined that it would be improper to apply the law of Quebec because "[o]ther than the occurrence of the accident in Quebec, there are no relevant contacts between this controversy and that jurisdiction."  <u>Id.</u> at 455.  Similarly, Georgia's only relationship to the instant case is that it is the place where the accident occurred.  While Georgia may have an interest in regulating the conduct of those performing low-level flights in its state, it would have no true interest in allocating loss to parties with no other connection to the state aside from the fact that they were passing through the state as part of a training flight.  <u>Id</u>.

Pennsylvania's connection to this case is similarly minimal.  In contrast to the numerous contacts this case has with Florida, Pennsylvania's only contact with the case is that Ensign Bonn resided in that state prior to joining the Navy.  Plaintiff will likely argue that Pennsylvania has an interest in seeing that its domiciliary is able to recover all amounts payable under its wrongful death statute.  However, it is common under New York law for a court to apply the wrongful death statute of a state other than the decedent's domicile state, even when the statute to be applied provides for a smaller recovery.  <u>See, e.g.</u>; <u>Barkanic v. General Admin. Of Civil Aviation of the People's Republic of China</u>, 923 F.2d 957, 963 (2nd Cir. 1991).  In <u>Bakanic</u>, the Second Circuit applied Chinese wrongful death law in a case where a citizens of the District of Columbia

12

and New Hampshire, even though the Chinese law limited plaintiffs' damages to $20,000.  Id. ("New York courts [] now apply the Neumeier rules to *all* post-accident loss distribution rules, including rules that limit damages in wrongful death cases.")  See also, Phelan 699 N.Y.S.2d at 569 (Applying New York wrongful death statute "since the interrelationship of the parties was centered in New York," despite fact that decedent was a Connecticut domiciliary and "Connecticut's wrongful death statute provides for greater potential recovery than New York's rule.")

Plaintiffs' argument appears to follow a line of cases decided prior to the New York Court of Appeals' decisions in Schultz and Neumeier, which generally held that the law of a decedent's domicile governs the issue of damages in a wrongful death case.  See, e.g., Kilberg v. Northeast Airlines, 172 N.E.2d 526, 9 N.Y.2d 34 (1961); Long v. Pan American World Airways, Inc., 213 N.E.2d 796, 16 N.Y.2d 337 (N.Y. 1965).  However, Neumeier and later Schultz indicated a true shift in the law, as the New York Court of Appeals made it clear that courts are to consider the full range of a state's contacts when determining which damages law will be applied, abandoning the more parochial view used in the Kilberg line of cases.  See Barkanic v. General Admin.  Of Civil Aviation of the People's Republic of China, 923 F.2d at 963.  It is also worth noting that the cases in the Kilberg line are easily distinguishable from this case because decedents' domicile states in those cases had a greater relationship with the parties and occurrences than Pennsylvania's relationship to the parties and occurrence in this case.  For example, in Kilberg, the flight in question took off from the decedents' home state of New York. Kilberg, 172 N.E.2d at 527.  In Long v. Pan Am, the Court of Appeals justified the

13

application of the wrongful death statute of the decedent's home state (Pennsylvania) as follows:

> [T]he defendant is a common carrier doing business in Pennsylvania and the accident occurred in the course of that business. Not only is that state the place where Long and Grieco, the decedents, purchased their round trip tickets, but it is also the place where the flight began and was to terminate. Having solicited interstate passengers in Pennsylvania, the defendant has no cause to complain about being held responsible for the consequences flowing, under Pennsylvania law, from its negligence toward those passengers.

Long, 213 N.E.2d at 798. See also, Babcock v. Jackson, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963) (New York law applied to case of accident which occurred in Ontario when all parties resided in New York and the automobile trip in question began and was to end in New York). To the contrary, in this case the flight in question originated in Florida and was scheduled to return there, and the entire interrelationship of the parties was centered in Florida. Furthermore, defendant Vertex does not conduct business in Pennsylvania and has no contacts with that state that would cause it to foresee being bound by Pennsylvania's wrongful death statute for an incident that did not even occur in that state. See Phelan, 699 N.Y.S.2d at 569.

Finally, plaintiffs' assertion that the wrongful death statute of Ensign Bonn's domicile state should apply to her claim is undercut by the contradictory assertion made in plaintiffs' initial disclosures that the wrongful death statute of 1st Lt. Davis' domicile state (California) should not apply to his claim. Plaintiffs' inconsistent stance, which is a clear attempt to avoid Florida's bar to recovery of future lost wages, is unjustified and not supported by the law. As discussed above, by virtue of Florida's greater contact and

relationship with the parties and facts in this case, Florida's wrongful death statute clearly applies to all claims pursuant to New York's choice of law rules.

### IV.    Conclusion

For the reasons set forth above, Vertex respectfully requests that Florida's Wrongful Death Act be applied to all of plaintiffs' damages claims in this matter.

This the 14th day of September, 2009.

>  /s/ Andrew L. Fitzgerald
>  Jack M. Strauch
>  Andrew L. Fitzgerald
>  118 South Cherry Street
>  Winston-Salem, NC  27101
>  Telephone:  (336) 725-8688
>  Facsimile:  (336) 725-8867
>  E-mail:  jstrauch@wcsr.com
>  E-mail:  afitzgerald@wcsr.com
>  *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an attorney at law and is admitted to practice in the Northern District of Florida, is attorney for defendants and is a person of such age and discretion as to be competent to serve process.

That on September 14, 2009, he served a copy of the foregoing **BRIEF IN SUPPORT OF VERTEX'S MOTION TO APPLY FLORIDA'S WRONGFUL DEATH ACT** via electronic filing.

Francis G. Fleming, Esquire
Daniel O. Rose, Esquire
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10007
FFleming@kreindler.com
DRose@kreindler.com

Anthony Tarricone, Esquire
Kreindler & Kreindler LLP
277 Dartmouth Street
Boston, MA  02116
ATarricone@kreindler.com

*Attorneys for Plaintiff*

/s/ Andrew L. Fitzgerald
Jack M. Strauch
Andrew L. Fitzgerald
118 South Cherry Street
Winston-Salem, NC  27101
Telephone:  (336) 725-8688
Facsimile:  (336) 725-8867
E-mail:  jstrauch@wcsr.com
E-mail:  afitzgerald@wcsr.com
Attorneys for Defendant