UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION
Civil Action No. 3:08cv40/MCR/MD

| | |
|---|---|
| DEBORAH BONN, *et al.*,            ) | |
| ) | |
| Plaintiffs,            ) | |
| ) | **PLAINTIFFS' MOTION FOR** |
| v.            ) | **A DETERMINATION THAT** |
| ) | **PENNSYLVANIA DAMAGES** |
| L-3 COMMUNICATIONS            ) | **LAW APPLIES** |
| CORPORATION, *et al.*,            ) | |
| ) | |
| Defendants.            ) | |

Plaintiffs, by and through their attorneys undersigned, and pursuant to 28 U.S.C. Federal Rules of Civil Procedure Rules 39 and 56, hereby respectfully request that the Court enter its Pretrial Order determining that Pennsylvania damages law, *to wit*, Pa. Consol. Stat. §§ 8301-8302 and cases decided thereunder, applies to the action brought by decedent Elizabeth Bonn's mother, Deborah Bonn, as Personal Representative of the Estate of Elizabeth Bonn and on her own behalf and on behalf of all interested beneficiaries of the Estate of Elizabeth Bonn.

The attached Memorandum of Points and Authorities and Declaration of Counsel are submitted in support thereof.

RESPECTFULLY SUBMITTED this 14th day of September, 2009.

/s/ Francis G. Fleming
Francis G. Fleming, Esquire
Daniel O. Rose, Esquire
Anthony Tarricone, Esquire
Megan Benett, Esquire
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10007
Telephone:  (212) 687-8181
Facsimile:  (212) 972-9432
ffleming@kreindler.com
drose@kreindler.com
atarricone@kreindler.com
mbenett@kreindler.com
*Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR A
<u>DETERMINATION THAT PENNSYLVANIA LAW APPLIES</u>**

**A.   <u>Statement of Material and Undisputable Facts.</u>**

This litigation arises out of the crash of a Sabreliner an aircraft flown by David Roark, a civilian pilot working for a company called L-3 Vertex Aerospace LLC (hereinafter "Vertex"). (*See* Plaintiffs' First Amended Complaint, ¶ 10.) Pilot Roark was pilot in command and the <u>only</u> pilot on board. He allowed the aircraft he was flying and on which decedent Elizabeth Bonn was a student navigator to get too close to the terrain at a very high speed. (*See id.*, ¶ 18.) The aircraft struck a tree in Georgia causing it to go out of control and crash. Everyone on board died. (*See id.*, ¶ 11.) Decedent Elizabeth Bonn was a student Naval Flight Officer receiving instruction in navigation and being evaluated by Lieutenant Jason Scott Manse, USN, a designated Naval Flight Officer and instructor who was also killed. A second student under instruction, United States Air Force First Lieutenant Jason Davis, was also receiving training and being evaluated and was on board and also killed. (*See*, Declaration of Francis G. Fleming ("FGF Decl."), attached hereto.)

Decedent Elizabeth Bonn was unmarried and had no children. She is survived by her mother, father and brother, all of whom are Pennsylvania domiciliaries and residents. She was born January 25, 1982 and was 23 years of age at the time of her death.

The record is clear that Elizabeth Bonn, like her survivors, was a domiciliary of Pennsylvania. A review of her mother's testimony shows that Elizabeth Bonn was born, grew up in, attended and graduated from high school in Pennsylvania. *See,* Deposition Transcript of Deborah Bonn at 14 and 24, attached to Fleming Decl., as Exhibit A. Elizabeth's parents lived

in Pennsylvania since Elizabeth was born and still live there. *Id*. at 24. Pennsylvania was her domicile of birth. (*See* Restatement of Conflicts (Second), § 14)

Decedent Elizabeth Bonn attended college out of state, but she returned home to Pennsylvania often. *Id*. at 16. Indeed, her "permanent residence" was considered to be Pennsylvania, according to her mother, *see id.* at 38, though the United States Navy had temporarily relocated Elizabeth to Florida in connection with a military training assignment at the Pensacola Naval Aviation Training Command. *Id*. at 38.

Decedent Elizabeth Bonn voted in Pennsylvania and had a bank account in Pennsylvania. She maintained a Pennsylvania phone number even while in Florida. *Id*. at 41. She had a Pennsylvania driver's license and had a Pennsylvania automobile registration. *Id.* at 39-40. Moreover, her remains were interred in Pennsylvania; the U.S. Navy forwarded her remains to Pennsylvania for burial after her death (although there is also a Memorial to her and her fellow officers in Arlington National Cemetery). It is clear by any standard that Elizabeth Bonn was indeed a domiciliary of Pennsylvania at the time of her death.

Defendant L-3 Communications Vertex Aerospace LLC is domiciled in Mississippi where it is incorporated and where it maintains its principal place of business.[1] *See* Defendants' Answer at ¶ 4. *See, Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 194 (1985) (declaring the jurisdiction where defendant's national quarters were located was its domicile for choice of law purposes).

---

[1] Though it is reported that L-3 Communications Vertex Aerospace LLC is incorporated in Delaware, in its Answer, L-3 Communications Vertex Aerospace LLC stated that it was "a Mississippi corporation with its principal place of business in Mississippi. *See* Defendants' Answer at ¶ 4.

B.     **New York Choice of Law Rules Govern this Determination.**

Plaintiff filed her action in the United States District Court for the Southern District of New York. New York choice of law conflict resolution methodologies therefore apply to the Bonn matter, notwithstanding the fact that venue was later transferred to the District Court for the Northern District of Florida. *See* J. Marrero's Orders dated January 11, 2008 and January 28, 2008 regarding transfer of venue from the Southern District of New York to the Northern District of Florida based on 28 U.S.C. § 1404. Federal law is settled that in a diversity case, a change in venue under 28 U.S.C. § 1404(a) should not be accompanied by a change in the applicable substantive state laws. *Van Dusen v. Barack*, 367 U.S. 612, 639 (1964); *see also*, *Ferens v. John Deere Co.*, 494 U.S. 516 (1990). Further, any advantages flowing from the state law of the original forum shall remain following change of venue. *Van Dusen,* 367 U.S. at 633. Thus, any choice of law issues raised in this action must be resolved by this Court pursuant to New York's choice of law rules.

C.     **New York Choice of Law Rules Would Apply the Damages Law of the Decedent's Domicile**

New York choice of law methodologies embrace a process generally known as "interest analysis."[2] In selecting applicable law governing any given issue, whether liability, damages or otherwise, New York courts determine which jurisdiction has the greatest interest in the application of its law to the dispute and select that jurisdiction's law. *Babcock v. Jackson,* 12 N.Y.2d 473 (1963); *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189 (1985); *DiMasi v. Rogers*,

---

[2] Students of the revolution in Conflicts of Law generally deem *Kilberg v. Northwest Airlines, Inc.*, 9 N.Y.2d 34 (1961) to have initiated the departure in New York from the First Restatement of Conflict's *lex loci delecti* principles (argued and briefed by plaintiffs' law firm). However, in *Babcock v. Jackson*, 12 N.Y.2d 473, New York unequivocally embraced the new conflicts methodologies, rejecting *lex loci* and the First Restatement, and New York has subsequently regularly been characterized as an "interest analysis" adherent. *See*, *e.g., Reach v. Pearson*, 860 F. Supp. 141, 143 (S.D.N.Y. 1994) (applying the "interest analysis" of *Babcock*).

3

34 A.D.3d 720 (2006); *see also Padula v. Lilarn Properties Corporation*, 84 N.Y.2d 519, 521 (1994).

In reaching a decision on the selection of conflicting substantive provisions of law, a trial court using New York choice of law rules must: (1) consider the precise issue in conflict; (2) determine the underlying purpose of the law to be applied which is in conflict (for example, whether the purpose of the rule of rule is to regulate conduct or allocate losses) (s*ee, DiMasi,* 34 A.D.3d at 720-721; *see also Schultz,* 65 N.Y.2d at 197-198); and (3) then apply the law of the jurisdiction with the greatest interest in the application of its law to the matter in conflict. *Babcock v. Jackson*, *supra*.

**D.     A Modest Substantive Conflict Exists and Pennsylvania as
        the Decedent's Domicile Should Supply the Applicable Law.**

In this matter, the respective domiciles of the parties are Pennsylvania and Mississippi; the crash occurred in Georgia and the training operation was based in Florida.  While the substantive law of each state is not radically in conflict in this case (involving a decedent who was not married and had no children), there are subtle yet nonetheless important differences.

Pennsylvania's wrongful death damages law allows recovery for the full economic value of the decedent's life, including any pecuniary losses to the decedent's survivors as well as the losses to the decedent's estate.  Indeed, a Pennsylvania wrongful death action has <u>two</u> components – the "death" action and the "survival" action.  *See* 42 Pa. Cons. Stat. §§ 8301, 8302. Damages in the death action include any pecuniary loss to survivors as well as loss of society and comfort. *See Berry v. Titus*, 346 Pa. Super. 376 (1985). Damages available in Pennsylvania pursuant to a survival action permit a decedent's estate to recover the loss of future net earnings and encompasses the action the decedent would have had for pain and suffering. *See Frey v. Pa. Elec. Co.*, 414 Pa. Super. 535 (1992).  In short, except arguably for grief itself, under

4

Pennsylvania law, virtually all losses sustained are recoverable. In pertinent part, a jury trying a case under Pennsylvania law would be expressly instructed to make an award for decedent's "net future earnings."

> Under the Survival Act, the damages recoverable by the plaintiff are as follows . . . The plaintiff is entitled to be awarded the value of the net amount that the decedent would have earned between today and he end of [her] life expectancy. Again, net earnings for this period are determined as follows: you must first calculate the total amount of the decedent's gross earnings between today and the end of [her] life expectancy; from this amount you must deduct the probable cost of [her] necessary and economical living expenses required to sustain life during the period [together with the amount of money contributions [she] would have made to [her] family during this period (which you have already awarded under the Wrongful Death Act.] Your award to the estate for total lost future net earnings thus represents the total net earnings over the decedent's work life expectancy.
>
> The plaintiff is entitled to be awarded an amount that you believe will fairly and adequately compensate for the mental and physical pain, suffering, and inconvenience and loss of life's pleasures that the decedent endured from the moment of [her] injury to the moment of [her] death as a result of this accident.

Pa. Suggested Standard Civil Jury Instructions, § 6.19.

Mississippi similarly provides for a full pecuniary loss recovery that considers losses to both the decedent's estate and to survivors. Recovery includes "all damages of every kind" to the decedent and beneficiaries, including loss of support, services, consortium, comfort, companionship, protection and society. *See* Miss. Code Ann. § 11-7-13; *see also Motorola v. Wilkerson*, 555 So.2d 713 (Miss. 1989); *Thornton v. Ins. Co. of N. Am.*, 287 So.2d 262 (Miss. 1973). A jury trying a case under Mississippi law would be instructed as follows:

> In relevant part, you are instructed that, should you find for the plaintiff in this case, you may award such **damages** as you determine to be just, taking into consideration: (a) all the **damages** of every kind sustained by the decedent as a result of his death; and (b) all **damages** of every kind to any and all parties interested in the suit, who are the decedent's [parents

and brother] *[here insert the relationship of the class of interested persons to the decedent]*.

In establishing the amount of **damages**, you should consider each of the following elements as are shown by a preponderance of the evidence, if any in this case:

A.   **DAMAGES** SUSTAINED BY THE DECEDENT

1. The amount which the decedent would have earned from the date of [her] death up to the date of this trial, but for [her] death;
2. The present net cash value of the decedent's work life expectancy from the date of trial;

Decedent's Surviving Parents and/or Siblings:

1. The loss of the society and companionship of the decedent sustained by [her] mother and father for the balance of their life expectancy; and/or

2. The loss of society and companionship of the decedent sustained by each of [her] brothers and sisters for the balance of the life expectancy of the decedent. Miss. Model Jury Instructions Civil, §11.23 [Westlaw].

Florida law focuses on the lost support and services and future loss of support and services of the survivors. *See* Fla. Stat. Ann. § 768.21. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor are all factors to be considered. *See id.* In computing the duration of future losses, the joint life expectancies of the survivor and the decedent may be considered. *See id.* Further, as is pertinent in this case, the parent of an adult child who leaves no other survivors may recover for the mental pain and suffering caused by the wrongful death. *See id.* In addition, a plaintiff in a wrongful death case involving the death of an adult child who leaves no descendents but is survived by a parent may recover for the loss of the prospective net

6

accumulations of the decedent's estate. *See id.* The closest Florida jury instruction appears to be articulated in Florida Standard Jury Instructions in Civil Case, § 6.5 (Westlaw 2009):

> c.     *Lost accumulations:*
>
> The estate's loss of net accumulations: "Net accumulations" is the part of the decedent's net income [from salary or business] after taxes, including pension benefits [but excluding income from investments continuing beyond death], which the decedent would have left as part of [her] estate if [she] had lived [her] normal life expectancy.

Finally, under Georgia law, recovery for wrongful death is also measured by the <u>full value of the life of the decedent</u>, which includes the value to the decedent of the lost relationships, the value of providing services in the home and community, and in general the loss of enjoyment of life. *See* Ga. Code Ann. § 51-4-1; *see also Kerr v. Mims*, 130 Ga. 541 (1973); *SouthWest R.R. Co. v. Paulk*, 24 Ga. 365 (1858); *Elsberry v. Lewis*, 140 Ga. App. 324 (1976). As with Pennsylvania, Georgia wrongful death law does not expressly allow an award for damages for survivors' mental anguish or emotional distress. *See* Ga. Code Ann. §51-4-2 and §51-4-5, but in respect to determining future economic losses, Georgia law focuses upon net earnings <u>of the decedent</u>, not only that part of net earnings which would have provided financial support to parents. *See id.* (Plaintiffs are unable to find comparable Georgia jury instructions on wrongful death damages.)

Thus, with respect to the wrongful death claim of an unmarried adult survived by parents and a sibling as is present in this case (*i.e.*, the 23 year old decedent was unmarried and without children), Pennsylvania, Georgia, Florida and Mississippi (all of which compensate for the loss to the decedent's estate in some capacity) allow a recovery measured by the future net earnings of the decedent. As exemplified by Pennsylvania damages law, the recovery is not limited to loss of pecuniary advantage to the decedent's survivors.

7

**E.    <u>Application of New York Conflicts Law Would Select Pennsylvania Law</u>.**

In reviewing choice of law precedent, it is clear that New York cases repeatedly hold that a trial court must differentiate between laws enacted to regulate conduct, and laws addressing remedies enacted for the purpose of allocating losses. *Padula v. Lilarn Properties Corp.,* 84 N.Y.2d 519 (N.Y. Dec. 1, 1994). Because laws designed to regulate conduct have the intended desired effect of preventing injury within a particular jurisdiction, the jurisdiction where the tort occurred or where the wrongful conduct took place generally has the most significant interest in these issues. Therefore, the laws of the jurisdiction in which the injury or conduct occurred often govern questions concerning liability. *Schultz*, 65 N.Y.2d at 198.

Damages conflicts, on the other hand, are usually not governed by the law of where the tort occurred. Usually, if not universally, damages conflicts are resolved by selection of the law of the plaintiffs' domicile. Indeed, the precise question presented here – what state's damages law applies– was addressed and resolved by the New York Court of Appeals as long ago as 1965. In *Long v. Pan Am*, 16 N.Y.2d 337 (1965), New York's highest court found that Pennsylvania's wrongful death statute governed the question of damages and resolved a conflict pertaining to an out of state airplane crash which involved a factual background indistinguishable from the case at bar. The dispute in the *Long* case arose out of a flight that originated in Puerto Rico with Pennsylvania as the intended final destination. Before reaching Pennsylvania, though, the airplane crashed in Maryland. The survivors of the passengers killed in the crash sued Pan Am, the operator of the airplane, in state court in New York. The New York court recognized the conflict and that it needed to ascertain which of the several possible jurisdictions' substantive law regarding the elements of wrongful death recovery had the predominant interest in being applied in that lawsuit. The decedent passenger was domiciled in Pennsylvania and the

8

decedent's surviving family members were from Pennsylvania; the defendant was a corporation doing business in New York and the crash occurred in Maryland.

The *Long* court concluded that under New York's choice of law principles, Pennsylvania substantive damages law – not the law of either Maryland (where the crash occurred) or New York (where the defendant conducted business) – applied. *Long,* 16 N.Y.2d at 341. In its analysis, New York's highest court found that the location of an airplane crash was essentially fortuitous and not relevant to damages. *Id*. at 341. Further, the relationship between New York and its resident businesses did not outweigh the interests of the plaintiff's domicile in the application of its law.

Applying these principles in the *Bonn* matter, with nearly identical facts, New York damages law should apply. The accident occurred during a United States Navy training flight over a route that originated in Tennessee and included flight over parts of North Carolina, Georgia and Alabama, and that had Florida as the ultimate destination. *See* document bates-stamped Vertex 002412, attached to Fleming Decl. as Exhibit C. The locus of the crash and death in Georgia were entirely fortuitous for damages conflict of laws purposes; the crash could have occurred at any point in the four states along the planned flight route. Clearly, *Long* holds and instructs that a New York court must give recognition to the fact that the domicile of the decedent has a strong and predominating interest in seeing that its domiciliaries are protected by the domiciliary state's wrongful death law. The *Long* court obviously recognized that the purpose of Pennsylvania's wrongful death law was to fully compensate its domiciliaries. But more importantly, *Long* holds and teaches that the application of any other state's law, including, in that case, Puerto Rico, New York, or Maryland law, would not override this interest and therefore should not be applied.

According to *Long*, therefore, in this action, Georgia (to the extent it is in conflict) has little or no "interest" in supplying damages or loss allocation law because of its fortuitous connection to this case. Moreover, since defendant Vertex is not a domiciliary, nor even resident of Georgia, if Georgia law was more favorable to Vertex than Pennsylvania, its interest would not outweigh Pennsylvania's interest. Consequently, for purposes of New York choice of law principles on a question of damages law, *Long* suggests that Georgia would have little or no interest in supplying the applicable damages law to this case.

As indicated earlier, however, Georgia law is in fact very similar in content to Pennsylvania law. In practical terms, selecting Pennsylvania damages law would not present a substantive conflict with Georgia law. Stated alternatively, application of Pennsylvania law would not impair Georgia's compensatory policies to any degree. *A fortiori*, a New York court would follow *Long* and apply Pennsylvania law in this case, even if Georgia law did in fact conflict and was less favorable in respect to plaintiffs' claims.

With respect to defendant Vertex's tie to Mississippi, which under New York conflicts methodologies would at least have an arguable interest in the protection of a domiciliary corporation from the more generous provisions of another state's damages law, *Long* establishes that this interest is less compelling when compared to Pennsylvania's strong interest in the application of its damages law to its domiciliaries. Consequently, *Long* clearly establishes that a New York court would apply the law of the decedent's domicile to damages issues – in this case Pennsylvania law – even though in *Long* the <u>defendant</u> Pan Am was a resident of New York, the forum, and New York's measure of damages rule was more favorable to defendant Pan Am. Stated alternatively, under the reasoning of *Long*, since New York courts recognize that Pennsylvania has an important interest in seeing that its citizens are protected by its laws

concerning the extent of the recovery, and no other state has a more substantial interest in the application of its law, a New York court on the *Bonn* facts would select Pennsylvania law to provide the measure of recovery.

Over the course of the last half century since New York abandoned *lex loci delicti*, *Kilberg v. Northwest Airlines, Inc.*, 9 N.Y.2d 34 (1961), numerous other New York cases acknowledge the determinative significance of domicile in respect to conflicts dealing with loss allocation issues (that is, conflicts which deal with compensation matters after the tort has occurred). *See e.g., Datskow v. Teledyne Continental Motors,* 807 F. Supp. 941 (W.D.N.Y. 1992). Indeed, New York's highest Court has articulated "rules," the so-called *Neumeier* rules, as an expressed assistance to other courts dealing with New York conflicts questions. *See generally*, *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972) (building upon *Tooker v. Lopez*, 24 N.Y.2d 569 (1969)). Such loss allocation rules include but are not limited to ascertaining the elements of damages set forth in various wrongful death contexts. (*Padula* at 522.) In these circumstances, the law of the decedent's (injured plaintiff's) domicile will usually be found to be applicable.

*Neumeier* followed *Long* by seven years. As is explained below, these rules purport to provide a primer and basic guidelines on New York choice of law damages or loss allocation questions utilizing mostly the domiciles of the parties involved. Though *Neumeier* factually addresses a conflict of laws concerning the applicability of a Guest Statute provision, the rules developed are nonetheless applicable to other types of loss allocation cases. *Cooney v. Osgood*

*Machinery, Inc.*, 81 N.Y.2d 66, 73 (1993).[3] As the New York Court of Appeals explained,

> *Babcock* and its progeny enable us to formulate a set of basic principles that may be profitably utilized, for they have helped us uncover the underlying values and policies which are operative in this area of the law. To quote again from the concurring opinion in *Tooker* . . . "Now that these values and policies have been revealed, we may proceed to the next stage in the evolution of the law-the formulation of a few rules of general applicability, promising a fair level of predictability." Although it was recognized that no rule may be formulated to guarantee a satisfactory result in every case, the following principles were proposed as sound for situations involving guest statutes in conflicts settings . . .
>
> "1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.
>
> "2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not-in the absence of special circumstances-be permitted to interpose the law of his state as a defense.
>
> "3. In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorica1. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier*, 31 N.Y.2d at 128-129.

In the matter at Bar, even if *Long* did not virtually stand on all fours for the controlling proposition that the law of the decedent's domicile applies, in accordance with the logic of the *Neumeier* rules, it is clear that a New York court would select the law of the domicile of the

---

[3] Cooney involved a loss allocation conflict. *Id.* at 74-75. Reasoning that a "just, fair and practical result [to conflicts questions]. . . may best be achieved by giving controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation" (*citing Neumeier*, 31 N.Y. 2d at 127, and explaining its reasoning in predecessor case *Babcock v. Jackson*,

12

decedent (Pennsylvania) to supply the applicable wrongful death damage law where it is in such consonance with the law of the place of the accident. Of the three situations addressed in *Neumeier*, the third rule would be applicable. This third rule expressly governs cases where both sides of a controversy are from different domiciles, and the tort did not occur in either of those domiciles. Here, Elizabeth Bonn and her family are domiciled in Pennsylvania. Vertex is incorporated and maintains its principal place of business in Mississippi, while the tort and injuries occurred in Georgia. Bonn Complaint, ¶¶4-7, In these kinds of situations, the third *Neumeier* principle provides the following guidance: the substantive law of the location of the tort is to be used, unless it appears that "displacing [the] normally applicable rule will advance the relevant substantive law purposes" of the jurisdictions involved. *Neumeier* at 129 (*quoting* concerning opinion in *Tooker*, 24 N.Y.2d at 585). As indicated above, as *Long* teaches explicitly in respect to the elements of recoverable damages, the decedent's domicile has such a substantive purpose (compensation of its domiciliaries) that it should be applied. While according to the *Neumeier* rules, the law of Georgia would be the initial presumptive source of law, where it has no substantive purpose at stake, this presumption would yield to the law of the decedent's domicile. Moreover, as presented in this case, because the similarities between the substance of Georgia law and Pennsylvania law are so comprehensive, neither should be or needs to be displaced and allowing a recovery in the nature of projected future net earnings (as is available under both Pennsylvania and Georgia law) should govern the case. In other words, under the *Neumeier* rules, it is possible to employ the presumption while at the same time advancing the substantive law purposes of the decedent's domicile's law. A stronger case for the

---

12 N.Y.2d 473; *see also, Tooker*, 24 N.Y.2d at 584), New York precedent recognizes that domicile usually dictates damages.

13

application of Pennsylvania law and a recovery of projected future net earnings could not be hypothesized.

## Conclusion

For these reasons, plaintiffs respectfully request this Court enter its Pretrial Order determining that the substantive damages law of Pennsylvania applies in this case and that the jury should be instructed to award future net earnings in the trial of this case.

RESPECTFULLY SUBMITTED this 14th day of September, 2009.

/s/ Francis G. Fleming
Francis G. Fleming, Esquire
Daniel O. Rose, Esquire
Anthony Tarricone, Esquire
Megan Benett, Esquire
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10007
Telephone:    (212) 687-8181
Facsimile:    (212) 972-9432
ffleming@kreindler.com
drose@kreindler.com
atarricone@kreindler.com
mbenett@kreindler.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of New York, is attorney of record for plaintiffs and is a person of such age and discretion as to be competent to serve process.

That on September 14, 2009, a copy of **PLAINTIFFS' MOTION FOR A DETERMINATION UNDER PENNYSLVANIA DAMAGES LAW** and **DECLARATIONOF FRANCIS G. FLEMING** were served upon all parties on this 14th day of September, 2009, via the Court's CM/ECF system.

/s/ Francis G. Fleming
Francis G. Fleming, Esquire
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017
Telephone: (212) 687-8181
Facsimile: (212) 972-9432

*Attorneys for Plaintiffs*